Jones, Chief Judge,
delivered the opinion of the court:
This is a suit for compensation for work performed.
On February 15, 1952, Congressman Erland H. Hedrick employed plaintiff as a clerk in his office at a salary of $325.06 per month. Mr. Hedrick advised the disbursing clerk of the House of Representatives in writing of the appointment. The appropriate papers were filed. Since the plaintiff was still a citizen of Austria as disclosed by the file papers, an affidavit was included that plaintiff owed allegiance to the United States. At that time she had taken the first step that was necessary before application for naturalization could be made.
On February 27, 1952, the disbursing clerk advised Congressman Hedrick by telephone message that due to an oversight of one of the clerks in his office, the fact was overlooked that plaintiff was a citizen of Austria and thus barred by section 1302 of the Supplemental Appropriation Act of 1952 (65 Stat. 755)[1] from being paid compensation.
*765 Plaintiff began work in Representative Hedrick’s office and worked 12 days before being notified that she was not eligible to receive compensation under the quoted provision of the Supplemental Appropriation Act.
The letter from Honorable E. H. Hedrick, M. C., to the Disbursing Clerk, House of Representatives, is as follows:
I am enclosing papers relative to the appointment of Mrs. Elizabeth Norcross aS a clerk in my office.
Mrs. Norcross, who was born in Vienna, Austria, has made application for permanent residency and is awaiting a hearing by the local office of the Immigration and Naturalization Service. Following the hearing by the Immigration authorities, it is Mrs. Norcross’ intention to file papers for United States citizenship.
I am confident that she will prove to be deserving of United States citizenship. The circumstances of her case are well known to and have been discussed with Mr. Robert L. Woytych, Officer in Charge of the local Immigration Office, REpublic 8200, Extension 839.
It will be noted that the full facts were disclosed at the time of the designation. At that time plaintiff had made application for permanent residency as a preliminary step toward naturalization. It was disclosed during oral argument that she has since been naturalized as a citizen of the United States, and is the mother of a child who is a citizen.
The plaintiff believed and, evidently after discussing the matter with the immigration authorities, Mr. Hedrick believed that upon the filing of an affidavit that she owed allegiance to the United States plaintiff would be eligible for such employment and payment under the third provision of section 1302.
The provision on which defendant relies says in pertinent part
* * * during' the current fiscal year [1952], no part of any appropriation contained in this or any other Act *766 shall be used to pay the compensation of any officer or employee of the Government of the United States * * * unless such person (1) is a citizen * * *, (2) is a person
* * * who, being eligible for citizenship, had filed a declaration of intention to become a citizen * * *, or (3) is a person who owes allegiance to the United States: * * *. [Emphasis supplied.]
Appropriations are made for one year only, unless the act states that the particular fund “shall be available until expended.” Any unused funds automatically go back into the Treasury at the end of the current fiscal year. Likewise, any restriction that may be attached to an appropriation bill is limited to one year’s operation unless it carries an expression such as “hereafter” showing that it is intended to be made permanent law. No such expression was included here. If it had been it would have been subject to a point of order by any Member at any time before final passage by the House.
Thus, it is clear that the ban of 1952 simply applied to the funds of that year, and would have no application to funds made available in any subsequent fiscal year.
This rule is well' understood by Members of Congress. It is made abundantly manifest by the fact that a somewhat similar provision had been carried in various annual appropriations beginning with 1939. If it had been intended to apply permanently it would have been wholly unnecessary to repeat the rider from year to year.
It is manifest that the ban only applied to the funds made available for that year, and is what is known as. a restriction on the use of funds made available “during the current fiscal year.” It follows that the restriction does not apply to funds appropriated by a subsequent Congress, unless the restriction were again attached, nor would it apply to any fund that later might be made available for the payment of this obligation.
This is not a technical interpretation. It is universally recognized.
Consequently, there is no reason why a subsequent Congress may not pay the reasonable value of services actually rendered even though the funds of the 1952 appropriation act could not be used in payment.
*767 There is some difference of opinion among the members of the court as to the above analysis. However, the entire court is in agreement that plaintiff should be paid. This could be done on a quantum meruit basis. That the laborer is worthy of his hire is gospel as well as the law of life among any just people.
What were her services reasonably worth ? If her skill in presenting her case before the court is any criterion she was well worth the rate of pay she was promised. We find that such was the value of the services rendered.
Plaintiff worked 12 days. The defendant received the benefit of her services. She has not been paid. Since the pioneer’s ax first rang in the wilderness of America the honoring of real obligations has been a tradition of her people. So long as we respect this tradition, the recognition of a just debt will be esteemed a privilege and its payment a matter of pride.
The plaintiff is entitled to recover the sum of $130.02 for her 12 days’ services as provided in the order of March 18, 1958.
Laramore, Judge; Madden, Judge; Whitaker, Judge; and Littleton, Judge, concur.

 Unless otherwise specified and during the current fiscal year, no part of any appropriation contained in this or any other Act shall be used to pay the compensation of any officer or employee of the Government of the United States (including any agency the majority of the stock of which is owned by the Government of the United States) whose post of duty is in continental United States unless such person (1) is a citizen of the United States, (2) is a person in the service of the United States on the date of enactment of this Act, who, being eligible for citizenship, had filed a declaration of intention to become a citizen of the United States prior to such date, or (3) is a person who owes allegiance to the United States : Provided, That for the purpose of this section, an affidavit signed by any such person shall be considered prima facie evidence that the requirements of this section with respect to his status have been complied with: Provided further, That any person making a false affidavit *765 shall 'be guilty of a felony and, upon conviction, shall be fined not more than $4,000 or imprisoned for not more than one year, or both : Provided further, That the above penal clause shall be in addition to, and not in substitution for, any other provisions of existing law : Provided further, That any payment made to any officer o.r employee contrary to the provisions of this section shall be recoverable in action by the Federal Government. This section shall not apply to citizens of the Republic of the Philippines or to nationals of those countries allied with the United States in the current defense effort.